United States District Court
Middle District of Florida
Jacksonville Division

ROUTEWARE, INC.,

      Plaintiff,

v.                                                               NO. 3:22-CV-634-MMH-LLL

JOHN CARVER,

      Defendant.

_____

## Report and Recommendation

Before the Court is plaintiff Routeware, Inc's Renewed Motion for Final
Default Judgment and for Permanent Injunction (renewed motion), doc. 77.
Routeware initiated this action in June 2022 against defendant, John Carver, alleging
a single count of breach of contract. Doc. 1. Routeware now seeks entry of a default
judgment against defendant under Rule 55 of the Federal Rules of Civil Procedure,
and to permanently enjoin defendant from use of plaintiff's "proprietary and
confidential information." *Id.* at 1. This motion has been referred to me for a report
and recommendation as to an appropriate resolution. The Court has reviewed the
renewed motion and other relevant documents on the record. For the reasons
discussed below, I submit that plaintiff's renewed motion be granted to the extent that
both a final judgment and a permanent injunction be entered against defendant.

**Background**

Plaintiff Routeware, Inc., is a Delaware corporation with its principal place of business in Portland, Oregon. Doc. 1 ¶ 1. Defendant John Carver is an individual residing in St. Johns, Florida. *Id.* ¶ 2. On February 7, 2020, Routeware acquired Core, a Jacksonville, Florida-based company. *Id.* ¶ 7. Defendant began working for Core in 2014 as a technical support representative. *Id.* ¶ 8. During his employment, defendant gained knowledge of confidential information and built relationships with some of Core's customers. *Id.* Defendant was also tasked with setting up Core's data room, which housed the servers running Core's "most trusted" software, named "Encore." *Id.* ¶¶ 7, 9. Defendant was one of the few Core employees that had access to Core's internal systems, applications, and infrastructure. *Id.* ¶ 9.

Because defendant was entrusted with confidential information, the parties executed a Non Solicitation, Confidentiality, and Arbitration Agreement (NCSA agreement). *Id.* ¶ 12; doc. 1-1. The NCSA agreement included several restrictive covenants, including one in which defendant promised not to solicit or accept business from actual or prospective customers for a period of two years after leaving employment. Doc. 1 ¶ 13. Additionally, defendant agreed not to use or disclose any confidential information for any purpose other than Core's business, for a period of five years following termination of employment, unless he obtained written authority to do so. *Id.* He also agreed to return all records, files, and other property in his custody, control, or possession following termination. *Id.* ¶ 18.

2

Defendant was terminated on August 30, 2021. *Id.* ¶ 17. In an alleged violation of the NCSA, defendant failed to return all records, files, and other property that he had custody, control, or possession of following his termination. *Id.* ¶ 18. Further, it is alleged that defendant offered his services to at least one of plaintiff's customers, Tri-State Disposal (TSD), within three months of his termination and took affirmative steps to load the Encore software onto TSD's machine. *Id.* ¶¶ 19, 25-28.

On June 8, 2022, plaintiff sued defendant in a one-count complaint for breach of contract. Doc. 1. On June 13, 2022, plaintiff filed proof of service, representing that defendant was properly served with the summons and complaint on June 9, 2022. Doc. 9. On June 18, 2022, defendant's counsel filed a notice of appearance. Doc. 16.

Plaintiff filed a Motion for Preliminary Injunction on June 21, 2022, doc. 17, and defendant filed his amended response to the preliminary injunction motion on June 29, 2022, doc. 24. On the same date, the parties filed a Joint Motion for Entry of Agreed Preliminary Injunction, doc. 25, which the Court granted on July 1, 2022, doc. 26. The Court directed defendant, within five days of the date of the order, to, among other things:

> (a)    return to Routeware all copies of the Encore software in his possession, if any;
>
> (b)    identify and return all other company confidential, proprietary, and trade secret property/information that he has maintained post-termination;
>
> (c)    describe all company confidential, proprietary, and trade secret property/information that he destroyed or deleted since termination if any; and

> (d)    cease and desist from further using, disclosing, accessing, altering, or deleting evidence of his breaches of the Non Solicitation, Confidentiality, and Arbitration Agreement (the "NSCA Agreement").

Doc. 26 ¶ 2. The Court specified that the preliminary injunction applied only "for the duration of the litigation and it is without prejudice to any permanent injunction [p]laintiff seeks and which [d]efendant may oppose, including any arguments either party might make or as to the relief either party might request." *Id.* ¶ 4.

Defendant filed his answer and affirmative defenses on July 25, 2022. Doc. 29. On October 3, 2022, defendant filed a suggestion of bankruptcy. Doc. 36. As a result, this case was stayed while the bankruptcy case was pending. Doc. 43. The Court directed both parties to file status reports every 120 days to advise the Court on the status of the bankruptcy proceedings. Doc. 43. Plaintiff filed status reports on June 21, 2023, October 19, 2023, and February 16, 2024. Docs. 48-50. Defendant did not file any status reports. While the case was stayed, counsel for defendant, with approval of the Court, withdrew from this case. Docs. 44, 62. Plaintiff moved for entry of default, doc. 54, which the Court denied without prejudice as premature. Doc. 68.

On March 14, 2024, the Court reopened the case. Doc. 61. On June 7, 2024, defendant's bankruptcy counsel appeared briefly and moved to withdraw as counsel. Doc. 69. The Court granted the motion to withdraw on June 10, 2024. Doc. 70. The Court then directed defendant to either obtain new counsel or notify the Court that he intended to proceed pro se on or before July 12, 2024. *Id.* Defendant failed to do so.

On July 18, 2024, the Court entered an Order to Show Cause, again directing defendant to either obtain counsel or notify the Court that he intended to proceed pro se and to explain why he did not comply with its previous order on or before August 8, 2024. Doc. 71. Defendant again failed to comply. The Court then scheduled a hearing for August 27, 2024, and warned defendant that his failure to appear may result in sanctions, including a recommendation that default judgment be entered against him for failure to defend. Doc. 72. Defendant failed to appear at the hearing. Doc. 74 (minute entry showing defendant did not appear). On October 8, 2024, the Court directed the Clerk to enter default against defendant, doc. 75, which was entered on October 15, 2024, doc. 76. Plaintiff then filed its renewed motion for default judgment and permanent injunction, doc. 77.

## Authority

Under Federal Rule of Civil Procedure 55, a two-part process exists for obtaining a default judgment. The party must first obtain an entry of default from the Clerk of Court, Fed. R. Civ. P. 55(a); next, the party must apply to the Court for a default judgment, Fed. R. Civ. P. 55(b). Rule 55 permits a default when a party "has failed to plead or *otherwise defend*" a lawsuit. Fed. R. Civ. P. 55(a) (emphasis added). Before granting a default judgment, however, a court must confirm it has jurisdiction over the claims, including that the complaint states a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (2); *Univ. of S. Ala. v. Am. Tobacco, Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Well-pleaded allegations of fact are admitted by default. *Cotton v. Mass. Mut. Life Ins. Co.,* 402 F.3d 1267, 1278 (11th Cir. 2005). If a plaintiff's complaint

fails to state a claim, however, a default judgment cannot stand. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997). A court must also ensure adequate service of process because a court lacks jurisdiction over a defendant who is not properly served. *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990).

Generally, a court has discretion under Rule 55 to hold an evidentiary hearing to determine appropriate damages, Fed. R. Civ. P. 55(b)(2). But the Court is not required to hold a hearing, particularly where there is sufficient evidence on the record, or no damages are requested. *See Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015) ("The district court may forego a hearing where all essential evidence is already of record.") (internal quotation marks omitted). Because plaintiff does not seek monetary damages in its motion for default judgment, the matter has been adequately briefed for review.

## Analysis

As noted above, a default judgment is appropriate "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" itself in a lawsuit. Fed. R. Civ. P. 55(a). As previously described, this case presents an unusual posture because plaintiff is moving for default judgment after defendant has answered. Although defendant filed his answer, he has not otherwise appeared to defend his lawsuit since July 2024, in violation of the Federal Rules of Civil Procedure and this Court's orders. Docs. 70, 71, 72, 75.

"A court may impose sanctions for litigation misconduct under its inherent power. The court's inherent power derives from the court's need 'to manage [its] own

affairs so as to achieve the orderly and expeditious disposition of cases.' This power, however, 'must be exercised with restraint and discretion.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) and *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)) (internal citations omitted). The Federal Rules of Civil Procedure authorize courts to impose sanctions for failure to comply with a court order. *See* Fed. R. Civ. P. 16(f), 37(b)(2), 41(b); and *see also Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1521 (11th Cir. 1996) (stating "[d]istrict courts have broad discretion under the Federal Rules of Civil Procedure to impose sanctions for failure to comply with court orders"). The Court's inherent power to sanction includes the entry of a default judgment. *Boswell v. Gumbaytay*, 2009 WL 1515912 at *2 (M.D. Ala. June 1, 2009). [1]

Although entering a default judgment is considered a drastic remedy, it is appropriate "when a defendant willfully and in bad faith disregards a court order and the court finds that a lesser sanction would not suffice." *Boswell*, 2009 WL 1515912 at *2; *see also Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986) ("the decision to enter default judgment[] ought to be a last resort—ordered only if noncompliance with [] orders is due to willful or bad faith disregard for those orders"). "When a litigant has been given ample opportunity to comply with court orders but

---

[1] The Court acknowledges and considers that "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) (citation omitted).

fails to effect any compliance, the result may be deemed willful." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 952 (11th Cir. 1996). Further, "a finding of bad faith is typically only established by showing that the party engages in . . . delaying or disrupting the litigation or hampering enforcement of a court order." *Hymowitz v. Supreme Lending*, 2021 WL 2585605 at *2 (N.D. Ga. Mar. 26, 2021) (quoting *Arugu v. City of Plantation*, 440 F. App'x 843, 846 (11th Cir. 2011)).

Here, the Court finds defendant's non-compliance to be willful and in bad faith. The Court has given the defendant numerous opportunities to defend against plaintiff's suit. The Court first directed defendant to either file a statement with the Court asserting that he intended to proceed pro se or have an attorney file a notice of appearance on his behalf. Doc. 70. The defendant ignored the Court's direction, and the Court entered an Order to Show Cause, to which defendant failed to respond. Doc. 71. The Court then set a hearing to address the matter and warned defendant that his failure to appear at the scheduled hearing could result in sanctions, including the Court granting default judgment against him. Doc. 72. Defendant again failed to comply with this Court's order and did not appear at the hearing. Defendant's non-compliance and lack of participation in the case both delays the resolution of the matter and disrupts the Court's need to achieve the orderly and expeditious disposition of cases. Defendant has been given multiple opportunities to comply with the Orders of this Court and defend this lawsuit but has chosen not to do so. Thus, default is appropriate here if the Court can properly exercise jurisdiction over the complaint and the well-

pleaded allegations of fact from the complaint support the plaintiff's claim for breach of contract.

### A.    This Court has jurisdiction over the action.

The Court next considers whether it can properly exercise jurisdiction over the action. Under 28 U.S.C. § 1332(a)(1), federal district courts have original jurisdiction over civil suits between citizens of different states if the amount in controversy exceeds $75,000. A corporation is a citizen of the state it was incorporated in and of the state where it has its principal place of business. *Wylie v. Red Bull N. Am., Inc.*, 627 Fed. App'x. 755, 757 (11th Cir. 2015). Here, plaintiff is incorporated in Delaware and has its principal place of business in Oregon. Doc. 1 ¶ 1. Defendant is a citizen of Florida. *Id.* ¶ 2. As such, there is complete diversity of citizenship, satisfying the first element of the statute. 28 U.S.C. § 1332(a)(1).

Next, the Court looks to the amount in controversy. Plaintiff alleges defendant owes damages of at least $487,000 plus court costs and judgment interest fees. *Id.* ¶¶ 39, 58. As the amount in controversy exceeds the minimum of the $75,000 threshold established by 28 U.S.C. § 1332(a)(1), this satisfies the second element of the statute and therefore the Court may exercise subject-matter jurisdiction.

The Court must also ensure it has personal jurisdiction over defendant. A federal court is "obligated to inquire about jurisdiction sua sponte whenever it may be lacking." *Jackson v. St. Jude Med. Neuromodulation Div.*, 62 F. Supp. 3d 1343, 1345 (M.D. Fla. 2014). A default judgment against a defendant that is not subject to personal jurisdiction is void. *Organizacion Miss Am. Latina, Inc. v. Urquidi*, 712 F. App'x

945, 949 (11th Cir. 2017). The Court has personal jurisdiction over defendant because he resides in Florida and voluntarily appeared at the outset of the case. Doc. 16. Moreover, defendant did not raise an issue regarding the Court's personal jurisdiction at the time he appeared.

### B.    Defendant was properly served.

Having satisfied the jurisdictional requirements of this case, the Court must also determine if defendant was properly served with notice of this action. A court cannot render judgment where service of process is inadequate. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). A party's failure to plead or otherwise defend a case may cause a default judgment only if the party has been properly served. *Hines v. Regions Bank*, 782 F. App'x 853, 854 (11th Cir. 2019).

A process server's sworn return of service is prima facie evidence of properly effected service. *Udoinyion v. The Guardian Sec.*, 440 F. App'x 731, 735 (11th Cir. 2011) (per curiam). "An unsworn written declaration may be used as evidence if the writer includes and signs a statement such as, 'I declare under penalty of perjury that the foregoing is true and correct.'" *Id.* (citing 28 U.S.C. § 1746). In the absence of other information calling into question the validity of service, a sworn or notarized return of service is deemed adequate evidence of properly executed service. *Id.* Plaintiff initially filed a return of service of defendant in which a process server declared under penalty of perjury that she served defendant at his personal address. Doc. 9. Defendant's lawyer filed a notice of appearance ten days after the lawsuit was filed, doc. 16, further

10

supporting adequate service. Defendant then answered the complaint, doc. 29, without alleging that service was improper. For these reasons, defendant was properly served.

### C.    Plaintiff adequately alleges a claim for breach of contract.

A Rule 55(a) entry of default does not itself warrant a final default judgment from the Court. *Nishimatsu Constr. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] "A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." *Id.* (citation omitted). Thus, to grant plaintiff's motion, there must be a sufficient basis in the pleadings to support a judgment in its favor. *Id.*

The Eleventh Circuit interprets the "sufficient basis" standard as "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (citing *Chudasama*, 123 F.3d at 1370 n.41). Thus, the Court accepts all allegations in plaintiff's complaint as true and analyzes whether it contains a short and plain statement setting forth facially plausible claims. *Id.*; see also Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Although a complaint need not contain detailed factual allegations, there must be more than "labels and conclusions." *Twombly*, 550 U.S. at 555.

---

[2] In *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit made prior to the close of business on September 30, 1981.

For the Court to find for plaintiff and grant default judgment, the factual allegations that are accepted as true "must provide the grounds for entitlement to relief." *Bippen v. 331 5th Ave., Inc.*, 2020 WL 5217054, at *3 (M.D. Fla. May 7, 2020), *report and recommendation adopted*, 2020 WL 2611593 (M.D. Fla. May 22, 2020) (citing *Twombly,* 550 U.S. at 555). If plaintiff has not sufficiently pled a claim, *see* Fed. R. Civ. P. 12(b)(6), an entry of default judgment is inappropriate.

The Court must first answer the question of what law governs this dispute before it can determine whether plaintiff has sufficiently stated a claim upon which relief can be granted. "Federal courts sitting in diversity must apply the forum state's choice-of-law rules." *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). In Florida, it is customary to enforce contractual choice-of-law provisions. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So. 2d 306, 311 (Fla. 2000). Without a choice-of-law provision, however, Florida courts apply the law of the state where the contract was made or performed. *Shapiro v. Assoc. Intern. Ins. Co.*, 899 F.2d 1116, 1119 (11th Cir. 1990) (citing *Goodman v. Olsen*, 305 So.2d 753, 755 (Fla. 1974)).

The NSCA agreement between plaintiff and defendant contains a choice-of-law provision indicating that the laws of Florida govern the operation of the contract. Doc. 1-1 ¶ 9. Under the terms of the NSCA agreement, the Court analyzes the sufficiency of the breach of contract claim under Florida law. To establish a claim for breach of contract under Florida law, a plaintiff must show the existence of a contract, that there was a material breach of the contract, and resulting damages. *Baron v. Osman*, 39 So.

3d 449, 451 (Fla. 5th DCA 2010) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).

The well-pleaded allegations in the complaint establish that defendant breached its contract with plaintiff under Florida law. First, plaintiff has adequately alleged the existence of a contract, namely the NSCA agreement, which is signed by defendant. Doc. 1 ¶¶ 12-16; doc. 1-1 at 4. Plaintiff has also adequately alleged that defendant materially breached the NSCA agreement. Specifically, plaintiff alleges that defendant materially breached Section 2(c) the NSCA agreement by: (1) offering his services to TSD within three months of his termination; (2) performing those services by installing and running an unauthorized version of the Encore software for TSD; (3) using, disclosing, and divulging the Encore code for TSD's benefit; (4) not returning all company confidential information and property post-termination; (5) using a copy of the Encore software, which compromises plaintiff's proprietary, confidential, and trade secret information; and (6) using confidential information and knowledge about how Encore software operated within TSD's infrastructure and architecture. Doc. 1 ¶ 57.

Next, plaintiff alleges that defendant materially breached and continues to breach Section 4(b) of the NSCA agreement by maintaining Plaintiff's confidential and trade secret information, including, but not limited to, the confidential, proprietary, and trade secret information comprising the Encore software. *Id.* In signing the NSCA agreement, defendant agreed to be bound by its terms; thus, defendant's failure to abide by its terms is a material breach of the contract.

Finally, plaintiff alleges that these material breaches resulted in damages. *Id.* ¶ 58. According to the complaint, plaintiff sustained both monetary and non-monetary damages because of defendant's material breaches. *Id.* ¶¶ 58-60. Specifically, plaintiff adequately alleges monetary damages from loss of a customer account, as well as irreparable harm from the breach of a restrictive covenant. *Id.*; *see* Fla. Stat. Ann. § 542.335(1)(j). Thus, the complaint sufficiently establishes a breach of contract claim under Florida law.

### D.    Injunctive Relief

Additionally, plaintiff requests that the Court enter injunctive relief.[3] As an initial matter, the parties previously agreed to the issuance of a preliminary injunction in this case. Doc. 25. Plaintiff now seeks a permanent injunction, requiring the defendant to: (1) return to plaintiff all copies of the Encore software in his possession, if any; (2) identify and return all other company confidential, proprietary, and trade secret property/information that he has maintained post-termination; (3) describe all company confidential, proprietary, and trade secret property/information that he destroyed or deleted since termination, if any; and (4) cease and desist from further using, disclosing, accessing, altering, or deleting evidence of his breaches of the NSCA agreement. Doc. 77 at 2-3, 23-24. The proposed language of the permanent injunction

---

[3] In its complaint, plaintiff originally sought monetary damages and injunctive relief. Doc. 1. In its renewed motion, plaintiff is no longer seeking monetary damages, thus the Court only considers the request for injunctive relief. Doc. 77 at 12.

is identical to the preliminary injunction that the parties previously agreed upon—and that remains in place during the pendency of this case. *See* Order, doc. 26.

A plaintiff seeking permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006).

Under Florida law, plaintiff is awarded a statutory presumption of irreparable injury when a restrictive covenant is breached. Fla. Stat. Ann. § 542.335(1)(j) ("The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking the enforcement of a restrictive covenant."). Therefore, because defendant has violated the NSCA agreement, the presumption of irreparable harm would likely apply. Even without the statutory presumption, plaintiff has adequately alleged that it suffered irreparable injury. Doc. 1 ¶¶ 41, 51, 59-60.

Without a permanent injunction, defendant may continue to possess and access Encore software and other confidential information. And there is a renewed risk of unauthorized use with the expiration of the preliminary injunction presently in place. *Id.* ¶ 59; doc. 77-1 ¶ 16. Aside from loss of business, if defendant is using old versions of the software, defendant could ruin plaintiff's good will and reputation by being associated with a version of Encore that is not current with security features. Doc. 77 at 19-20. Given the likelihood that defendant possesses an outdated version of the

15

software at issue and that irreparable harm would continue to occur, a permanent injunction in this matter is warranted.

Plaintiff has also adequately alleged that monetary damages are inadequate in this case. Monetary damages will not suffice if defendant is permitted to use an older version of the Encore software that is associated with plaintiff's name and good will. Doc. 77 at 20-21. And as a result of defendant's bankruptcy petition, plaintiff has little to no chance of recovering any monetary damages from defendant. *Id.* at 21.

The balance of hardships also weighs in favor of a permanent injunction. Granting the permanent injunction would simply keep defendant from breaching a contract—one that he has already been enjoined from breaching due to the agreed upon preliminary injunction. Doc. 26. Further, Florida law favors enforcing contracts without consideration to "any individualized economic or other hardship that may be caused to the person against whom enforcement is sought." Fla. Stat. § 542.335(1)(g). The entry of the permanent injunction would not cause defendant to forfeit any additional rights. On the other hand, plaintiff stands to lose much, including the exclusive use of confidential and proprietary information, potential customers, and the benefit of its name. It will assuredly suffer from unauthorized use and proliferation of its proprietary software.

Finally, plaintiff has adequately alleged that a permanent injunction would not be a disservice to public interest. Specifically, as plaintiff points out, under Florida law, it is in the public's best interest to enforce contractual rights. *See* Fla. Stat. § 542.335(1)(i); *E-Telequote Insurance, Inc. v. Mayberry*, 8:22-cv-1222-WFJ-JSS, 2023 WL

3568529, at *3 (M.D. Fla. May 18, 2023) (explaining that the public interest is served through the enforcement of restrictive covenants) (citations omitted).

**Recommendation**

For the reasons stated above, I respectfully **recommend** that:

1.      Plaintiff's Renewed Motion for Entry of Final Default Judgment and for Permanent Injunction, doc. 77, be **granted**.

2.      Defendant John Carver be found liable to plaintiff Routeware as to the single count in the complaint: Count I (Breach of Contract).

3.      The Clerk of Court be **directed to enter judgment** in favor of Routeware, Inc. and against John Carver.

4.      John Carver be **directed** to:

a.      Return to Routeware all copies of its Encore software in his possession, if any;

b.      Identify and return all other Routeware confidential, proprietary, and trade secret property/information that he has maintained post-termination;

c.      Describe all Routeware confidential, proprietary, and trade secret property/information that he destroyed or deleted since his termination; and

d.    Cease and desist from further using, disclosing, accessing, altering, or deleting evidence of his breaches of the Non Solicitation Confidentiality and Arbitration Agreement.

5.    The Clerk be directed to **close** this file.

**Entered** in Jacksonville, Florida, on July 25, 2025.


LAURA LOTHMAN LAMBERT
United States Magistrate Judge


## Notice to the Parties

"Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (Doc. No. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

c:
The Honorable Marcia M. Howard, Chief United States District Judge
Francesca Russo, Esquire
Amy K. Van Zant, Esquire
David P. Fuad, Esquire
John Carver, pro se defendant
        4329 Rye Court
        St. Johns, FL 32259